UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DEYAN FANG

|  |  |  |
|---|---|---|
| | Plaintiff, | Index No. 15 CV 04886 |

-against-

**AMENDED COMPLAINT
AND DEMAND FOR
JURY TRIAL**

CITY OF NEW YORK; and individually and in their
official capacity as New York City Police Officers
CHRISTOPHER MCNEELY (Shield No. 23479) and
ANDREW D'AMICO (Shield No. 18915),

                                                                               Defendants.
------------------------------------------------------------------------x

        Plaintiff DEYAN FANG, by his attorney, the Urban Justice Center, complaining of defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

        1.     Plaintiff brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 USC §§ 1983 and 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions and laws of the United States and the State of New York.

        2.     This complaint alleges that the defendant police officers unlawfully arrested plaintiff while he was legally working as a street vendor selling drawings on the sidewalk in midtown Manhattan. Defendants arrested plaintiff without probable cause when he attempted to use his cell phone to record the incident. Defendants' actions resulted in injuries for which plaintiff suffered damages for violations of his Constitutional rights, economic damages for loss of business, and damages for pain and suffering.

3. This action arises out of the deprivation of plaintiff's liberty and property interests by defendants, who acted under color of state law.

## JURISDICTION

4. This action is brought pursuant to 42 USC §§ 1983 and 1988 of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the laws of the State of New York.

5. Jurisdiction is founded upon 28 USC §§ 1331, 1343 and 2202.

## VENUE

6. Venue is properly laid in the Southern District of New York under 28 U.S.C. §1391(b) because the defendants reside in this district and the events that gave rise to plaintiff's claim occurred in this district.

## JURY DEMAND

7. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed R. Civ. P. 38(b).

## PARTIES

8. Plaintiff DEYAN FANG is a 45 year-old resident of New York City and a street vendor who creates and sells drawings on the sidewalks in midtown Manhattan. Plaintiff has been a street vendor for approximately ten years.

9. Defendant CITY OF NEW YORK is a municipal entity created and authorized under the laws of the State of New York.

10. Defendant Police Officer CHRISTOPHER MCNEELY is sued in his individual and official capacity. He was at all times relevant to this action a police officer employed by the City of New York, acting within the scope of his employment and under color of state law, to

wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York.

11. Defendant Police Officer ANDREW D'AMICO is sued in his individual and official capacity as a New York City police officer and acted within the scope of his employment and under color of state law, to wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York.

## FACTUAL AND GENERAL ALLEGATIONS

12. Plaintiff is a street vendor and artist who creates and sells drawings of individuals on the sidewalk near Times Square. He immigrated to the United States from China approximately thirteen years ago and lives in Queens with his wife and two children.

13. On September 5, 2014, at approximately 8:00 PM, plaintiff was working at his vending stand near the southwest corner of 7th Avenue and 48th Street.

14. At approximately 9:30 PM, defendant police officer Christopher McNeely and defendant officer Andrew D'Amico arrived at plaintiff's vending location and asked plaintiff for his identification. Plaintiff asked "why?"

15. The defendant police officers told plaintiff that he was too close to the crosswalk.

16. Plaintiff has been a street vendor for many years, and informed the defendant officers that he was ten feet away from the crosswalk and that he was following all the vending rules.

17. In order to have evidence that he was complying with all the vending rules, plaintiff began to use his cellular telephone to video-record the area where he was vending as proof that he was in compliance with all vending regulations.

18. The defendant police officers became visibly angry when they saw plaintiff recording the scene and they said "give me your fucking ID" while taking out their handcuffs.

19. Plaintiff complied with the defendant police officers and retrieved his identification from his wallet in his back pocket and presented it to the defendant officers. However, the defendant officers arrested plaintiff by handcuffing him, seizing his cellular telephone, identification, and wallet, and forcing him into the police vehicle.

20. The defendant police officers transported plaintiff to the NYPD Midtown South precinct where he remained in a cell until the following morning.

21. The next morning on September 6, 2014, plaintiff was transported to the New York City Criminal Court located at 100 Centre Street where he remained until 8:00 PM when, after spending more than twenty two hours in custody, he was arraigned and released.

22. Plaintiff was charged with New York Penal Law § 205.30 for allegedly resisting arrest and New York City Administrative Code § 20-465 for allegedly vending within ten feet of a crosswalk.

23. Plaintiff returned to court on October 30, 2014 where his charges were adjourned in contemplation of dismissal.

24. Plaintiff retrieved his cellular telephone from the district attorney's office, however, the video which contained footage of the incident had been erased. Plaintiff had been without his cellular telephone for almost two months since it was in the custody of the district attorney's office who refused to release it until plaintiff's criminal charges were resolved.

25. Defendant police officers arrested plaintiff without probable cause.

26. Plaintiff was not vending within ten feet of a crosswalk and the defendants had no probable cause to believe he was doing so.

27. Plaintiff did not resist arrest. Plaintiff did not intentionally prevent or attempt to prevent a police officer or a peace officer from effecting an authorized arrest of himself or another person.

28. The Defendant officers knew or should have known that they had no right to arrest plaintiff.

29. The arrest of plaintiff was performed under color of law, within the scope of the defendant officers employment and authority, and for whose acts the defendant City is liable under the theory of *respondeat superior*.

30. The arrest of plaintiff violated clearly established rights under the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, and was the direct and proximate cause of his damages.

31. The actions of the defendant officers were intentional, malicious, and in bad faith, thus giving rise to punitive damages.

## DAMAGES

32. As a direct and proximate cause of the said acts of defendants, plaintiff suffered the following injuries and damages:

    a. Violation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution; and

    b. economic damages including loss of income.

    c. damages for pain and suffering

## CAUSES OF ACTION

### COUNT I – 42 USC § 1983 – UNLAWFUL ARREST

33. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth in full.

34. Defendant officers violated plaintiff's right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution by unlawfully arresting plaintiff, intending to confine him, and confining him without probable cause to believe that plaintiff had committed any offense or violated the law.

35. Plaintiff was aware of his confinement as he was held in custody on September 5, 2014 at approximately 9:30 P.M. until approximately 8:00 P.M. on September 6, 2014 without his consent or any reasonable justification. Plaintiff's confinement was not otherwise privileged.

### COUNT II – 42 USC § 1983 – PROCEDURAL DUE PROCESS

36. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth in full.

37. By their conduct, under color of law, defendants deprived plaintiff of his liberty without due process of law.

### COUNT III – 42 USC § 1983 – SUBSTANTIVE DUE PROCESS

38. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth in full.

39. By their conduct, under color of law, defendants denied plaintiff his right to due process by arresting him for arbitrary or irrational reasons.

### COUNT IV – 42 USC § 1983 – RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS

40. By their conduct, under color of state law, defendants unlawfully deprived plaintiff of his property and his right to be free from unlawful arrest in retaliation for plaintiff's

lawful exercise of his rights to film and record police activity under the First Amendment to the United States Constitution.

## COUNT V – 42 USC § 1983 – MONELL CLAIM

41. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth in full.

42. New York City has maintained policies and customs exhibiting deliberate indifference to the constitutional rights of street vendors selling at lawful locations, which caused the violation of plaintiff's rights.

43. It was the policy and custom of the City to train, supervise and discipline officers, including the defendant officers, inadequately with respect to laws surrounding street vendors, thereby causing the defendants in this case to engage in the unlawful conduct described above.

44. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct regarding the unlawful enforcement of street vending regulations, leading to unlawful arrests or unlawful property deprivation, documented in the following cases against the City of New York and its NYPD officers.

    a. Waleed Salama v. City of New York, et al. 13-CV-9006 (PKC) (S.D.N.Y.). The plaintiff in Salama was a licensed mobile food vendor who was lawfully vending in a legal location and in full compliance with all street vending regulations. NYPD officers, erroneously believing he was vending on a restricted street, arrested the plaintiff and charged him with resisting arrest and obstructing governmental administration as well as vending on a restricted street, charges which were all later dismissed.

    b. Abdelliah Mrigle and Adel Sayed v. City of New York, et al. 11-CV-4443 (GBD) (S.D.N.Y.). The plaintiffs in this case were two mobile food vendors who sold halal food on 28th Street and Broadway . In September and October, 2010, several NYPD officers, who failed to understand the vending regulations regarding minimum sidewalk width for the lawful placement of a pushcart, started a campaign of aggressive enforcement trying to shut down plaintiffs' food cart, despite the fact that plaintiffs' pushcart was on a sidewalk that met the minimum width requirements. As a result, one of the plaintiffs was arrested and charged

with disorderly conduct. All charges and tickets written against the plaintiffs were dismissed.

c. <u>Eliana Jaramillo v. City of New York, et al.</u> 10-CV-1197 (LTS) (S.D.N.Y.). The <u>Jaramillo</u> case was about a food vendor from Bolivia who had sold hot dogs in midtown Manhattan for twenty six years. In September 2009, two NYPD officers, due to their wrong understanding of the street vending regulations regarding minimum sidewalk width necessary for the lawful placement of a pushcart, issued the plaintiff two tickets and seized her pushcart and all of its contents despite the fact that plaintiffs' pushcart was on a sidewalk that met the minimum width requirements. The charges against the plaintiff were dismissed and she returned to her vending spot as a result of this proceeding.

d. <u>Marie-Rose Goba v. City of New York, et al.</u> 14-CV-2522 (CM) (S.D.N.Y.). The plaintiff in <u>Goba</u> was a mobile food vendor from Côte d'Ivoire who sold sliced fruits in Manhattan. One day she was arrested for unlicensed food vending even after she provided her mobile food vending license to the arresting officer. The arresting officer, wrongfully believing that plaintiff's mobile food vending license was insufficient, seized her vending cart and entire contents which were never recovered. The charges against the plaintiff were dismissed.

e. <u>Yuhua Liu v. City of New York, et al.</u> 14-CV-6951 (PAC) (S.D.N.Y.). The plaintiff in <u>Liu</u> was an artist who created and sold caricatures on the sidewalk near Times Square. In July, 2014, two police officers arrested plaintiff, claiming that his art sample was touching the sidewalk, apparently under the inaccurate belief that this is a violation of the street vending regulations. The charges against plaintiff were dismissed after a trial at the criminal court.

f. <u>Maria Cocoango v. City of New York, et al.</u> 14-CV-2524 (PC) (S.D.N.Y.). The plaintiff in <u>Cocoango</u> was a mobile food vendor who sold Ecuadorian food in Queens. In March, 2014 she was arrested because a police officer, who had evidently not been trained on the new format of mobile food vending licenses, claimed she had a fraudulent mobile food vending license. However, the plaintiff had been a mobile food vendor for eight years and had renewed her vending license every two years at the City's licensing center, the only place that issues mobile food vending licenses.

45. It was the policy and custom of the City to train, supervise and discipline officers, including the defendant officers, inadequately with respect to laws surrounding individuals constitutionally protected right to film and record police activity in public spaces, thereby causing the defendants in this case to engage in the unlawful conduct described above.

8

46.     The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct regarding unlawful arrests or unlawful property deprivation, in retaliation for the filming and recording of police activity, documented in the following incidents and cases against the City of New York and its NYPD officers.

   a.    Sheikh Faisal v. City of New York, et al. 09-CV-10267 (DAB) (S.D.N.Y.). The plaintiff in Faisal was a Bangladeshi hot dog vendor who has been working on lower Broadway for ten years. Two NYPD officers approached the plaintiff and issued him to summonses for violations of the street vending regulations, even though the plaintiff was in full compliance with the rules. After the plaintiff's nephew took photographs of the scene and the officers, the officers seized the plaintiff's hot dog cart and all its contents. All charges against the plaintiff were later dismissed.

   b.    Bandele, et al. v. City of New York, et al. 07-CV-03339 (MGC) (S.D.N.Y.). The three plaintiffs in Bandele were filming police officers arresting individuals in Brooklyn in February, 2005. The police officers approached the plaintiffs and ordered them to leave. The plaintiffs continued to film and then were arrested and had their cameras knocked to the ground. See *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, The New York Times (April 27, 2007). http://www.nytimes.com/2007/04/27/nyregion/27mbrfs-lawsuit.html?_r=0.

   c.    Carnevale, et al. v. City of New York, et al. 08-CV-9993 (DAB) (S.D.N.Y.). The plaintiffs in Carnevale were observing and recording police officers removing locked-up bicycles in the East Village. After plaintiffs were initially approached by the police officers, the plaintiffs asserted their right to film and were then arrested. See Colin Moynihan, *City Settles with Two Arrested After Police Confrontation*, The New York Times (March 31, 2010), http://cityroom.blogs.nytimes.com/2010/03/31/city-settles-with-pair-arrested-after-police-confrontation/.

   d.    On August 4, 2012, a New York Times photographer, Robert Stolarik, was photographing a teenage girl being arrested in the Bronx. Mr. Stolarik was ordered by a NYPD officer to stop taking pictures and when Mr. Stolarik identified himself as a member of the press and asserted his rights to photograph, he was arrested. The arresting officer was later indicted on charges for fabricating the arrest. See Russ Buettner, *Officer Is Indicted on Charges of Lying About Photographer's Arrest*, The New York Times (August 26, 2013), http://www.nytimes.com/2013/08/27/nyregion/officer-is-indicted-on-charges-of-lying-about-photographers-arrest.html.

    e.    <u>Lin, et al. v. City of New York, et al.</u> 09-CV-1936 (PGG) (S.D.N.Y). On March 30, 2007, the plaintiffs in <u>Lin</u> were filming and photographing the arrests of bicyclists during a critical mass bicycle ride in midtown Manhattan. Police officers at the scene instructed the plaintiffs not to document the arrests and thereafter arrested the plaintiffs.

47. As a result of widespread media coverage regarding retaliatory arrests for the lawful recording of police activity, the NYPD issued an internal memo on August 6, 2014 reminding all officers that members of the public have a legal right to record police activity. <u>See</u>, Ben Yakas, *NYPD Internal Memo Stern Reminder Cops Can't Arrest You For Videotaping Them* (August 30, 2014), http://gothamist.com/2014/08/30/nypd_internal_memo.php.

48. The NYPD's widespread custom and policy of interfering with the public's constitutional right to lawfully film police activity resulted in the arrest of plaintiff.

49. As a direct and proximate cause of the City's deliberate indifference, Defendants violated Plaintiff's constitutional rights for which he suffered damages.

WHEREFORE, Plaintiff requests the following relief jointly and severally as against all the Defendants:

    1.    Award compensatory damages in an amount to be determined at trial;

    2.    Award punitive damages in an amount to be determined at trial;

    3.    Disbursements, costs, and attorneys' fees; and

    4.    For such other and further relief as this Court may deem just and proper.

Dated:	New York, New York
	November 9, 2015

                                            Respectfully submitted,

                                            _____/s/_____
                                            Sean Basinski/SB3597
                                            Matthew Shapiro/MS1949
                                            Urban Justice Center
                                            *Attorneys for Plaintiff*
                                            40 Rector Street, 9th Floor
                                            New York, NY 10006
                                            (646) 602-5679 phone
                                            (212) 533-4598 fax